UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

Fredrick Perkins and Alice J. Perkins,

                              Plaintiffs,

      v.

United States of America,

                              Defendant.

**Decision and Order**

16-CV-495V

───────────────────────────────

## I.    INTRODUCTION

Plaintiffs Fredrick Perkins ("Fredrick") and Alice Perkins ("Alice") live on the Allegany Territory of the Seneca Nation of Indians ("Seneca Nation"), a member of the Haudenosaunee (or Iroquois) Confederacy. Plaintiffs believe that the Internal Revenue Service ("IRS") improperly assessed income tax and penalties against them for income earned from the sale of gravel extracted from certain land within the Seneca Nation. The tax dispute between plaintiffs and the IRS concerns tax years 2008, 2009, and 2010. For tax years 2008 and 2009, plaintiffs chose to file a pre-payment petition in the United States Tax Court because the amount that they potentially owe is large—nearly $600,000 total. For tax year 2010, with a potential deficiency of $9,863.68, plaintiffs first chose to pay the total amount to avoid any legal liabilities. Plaintiffs then applied to the IRS for a refund; when the IRS did not respond to the application within six months, plaintiffs filed suit here. One procedural result of plaintiffs' choices is that they have two live legal actions in two different venues: one in the Tax Court, and one here.

Reacting to the existence of two different legal actions, defendant the United States of America filed two related non-dispositive[1] motions in this case on October 19, 2017: a motion to stay this case pending the outcome of proceedings in the Tax Court; and a motion to opt out of alternative dispute resolution ("ADR"). (Dkt. Nos. 32, 33.) Defendant wants this case stayed because it believes that the Tax Court case is in a more advanced phase and is closer to trial. Considering that the Tax Court case has a much larger amount of money at stake, defendant believes that the outcome of that case will shape the outcome of this case, which in turn would streamline this case and avoid duplicative discovery and other proceedings. In a related fashion, defendant wants this case exempted from ADR because attempts at settlement would be futile so long as the parties litigate the much larger amount at stake in the Tax Court case. Plaintiffs oppose a stay because the Tax Court, in their view, has signaled that it is waiting for the outcome of this case. Plaintiffs also believe that a stay would violate their right to choose this venue for their dispute concerning the 2010 tax year. Plaintiffs nominally oppose the motion to opt out of ADR; to the extent, however, that the motion signals that defendant is unwilling to engage in meaningful mediation, plaintiffs would rather opt out of ADR than waste their time.

The Hon. Lawrence J. Vilardo has referred this case to this Court under 28 U.S.C. § 636(b). (Dkt. No. 10.) The Court has deemed the pending motions submitted on papers under FRCP 78(b). For the reasons below, the Court denies the motion for a stay and grants the motion to opt out of ADR.

---

[1] "A motion for a stay of proceedings is nondispositive." *Ace Am. Ins. Co. v. Carolina Roofing, Inc.*, No. 09-CV-01010(A)(M), 2010 WL 2649918, at *1 n.2 (W.D.N.Y. June 30, 2010) (citations omitted).

## II. BACKGROUND

This case concerns income that plaintiffs declared as exempt from tax on their income tax return for calendar year 2010. The amount of income in question is $6,113; it derived from gravel mining operations that Alice conducted for a few years on land located within the Seneca Nation Allegany Territory. Plaintiffs declared the income as exempt because they believed that it fell within the protection of two Indian treaties: the Treaty with the Six Nations of 1794 (the "Canandaigua Treaty") and the Treaty with the Seneca of 1842 (the "1842 Treaty"). The IRS disagreed with plaintiffs' characterization of the income as exempt and issued a tax deficiency for 2010 in the amount of $9,863.68—the income plus interest and penalties. Around the same time that the IRS issued the deficiency for tax year 2010, it issued deficiencies for tax years 2008 and 2009, for the same reason, totaling $582,920.90.

Plaintiffs approached the tax deficiencies in different ways based on their amounts. For the smaller deficiency of tax year 2010, plaintiffs decided to pay the full amount and then to seek a refund under 26 U.S.C. §§ 6402 and 6511. When the IRS failed to respond to the claim for a refund within six months, *see* 26 U.S.C. § 6532(a)(1), plaintiffs filed suit here under 26 U.S.C. § 7422. For the two larger deficiencies, plaintiffs decided to challenge any payment by filing a petition for redetermination with the Tax Court under 26 U.S.C. § 6213(a). (*See generally* Tax Court Case No. 028215-14.) The Tax Court had set the case for trial for May 16, 2016 but then adjourned the trial generally at plaintiffs' request. (Dkt. No. 35 at 8.) On October 31, 2016, the IRS filed a motion for summary judgment. (*Id.*) The Court has not seen the Tax Court motion papers and consequently does not know why the IRS seeks summary judgment in the Tax Court

case.  Defendant, however, has provided a clue: "The issues in the two venues are essentially identical . . . . [with] [t]he presence of common issues of fact and law in this case and the Tax Court case . . . ."  (Dkt. No. 32-1 at 6.)  Plaintiffs have attached to their motion papers a copy of a Tax Court order that provides another clue; that order states that "[t]he main issue [in the Tax Court case] raises the question of the taxability of gravel sales by an Indian in Indian country.  The Court spoke with the parties on July 22, 2016 again to see if the unusual legal issue the case may raise . . . can be set up for decision as a matter of law."  (Dkt. No. 35 at 15.)  That same Tax Court order directed the parties to file updates about, *inter alia*, "any developments in the district-court litigation that raises the same issue."  (*Id.*)  The motion for summary judgment remains pending in the Tax Court.  (*Id.* at 9.)  In plaintiffs' view, "it appears from the Tax Court's order requiring the parties to keep the Tax Court informed about the progress of this district court refund action, and the Tax Court's failure to render a decision on the government's motion for summary judgment therein, that the Tax Court has adopted a de facto stay of its proceeding awaiting the outcome of this district court refund action."  (Dkt. No. 36 at 4.)

This case, meanwhile, though in the early stages of factual discovery, already has addressed part of the main issue that the Tax Court identified in its case.  On September 14, 2016, defendant filed a motion to dismiss the amended complaint that plaintiffs filed here.  (Dkt. No. 9.)  Defendant sought dismissal on the basis that neither the Canandaigua Treaty nor the 1842 Treaty conferred a tax exemption for plaintiffs' 2010 gravel sales.  This Court recommended to Judge Vilardo that plaintiffs' claimed exemption under the Canandaigua Treaty was legally cognizable, subject to factual confirmation, while their claimed exemption under the 1842 Treaty was not.

4

(Dkt. No. 14.)  Judge Vilardo decided that plaintiffs' claimed exemption was legally cognizable under both treaties.  (Dkt. No. 24.)  Whether this case fits factually under the protection of the two treaties remains to be seen (*see* Dkt. No. 14 at 12–13), and the Court has issued a scheduling order accordingly.  (Dkt. No. 30.)  With respect, however, to the pure legal question of "the taxability of gravel sales by an Indian in Indian country," as the Tax Court wrote in its case, the viability of an exemption now is settled—subject, of course, to possible Second Circuit review following a final judgment.

On October 19, 2017, a few weeks after the scheduling order issued, defendant filed the twin pending motions.  Defendant seeks a stay of this case for several reasons.  Defendant asserts that discovery in the Tax Court case is complete but has barely begun here—meaning, to them, that the Tax Court case should be allowed to run its course first.  Defendant doubts "that Plaintiffs would be willing to negotiate a settlement of this District Court lawsuit that did not somehow dispose of the pending Tax Court action as well, so mediation will be futile until the Tax Court case is disposed of."  (Dkt. No. 32-1 at 5.)  A stay would, in defendant's view, have the additional benefit of reducing duplicative litigation.  Additionally, and despite the way in which the motion to dismiss in this case resolved, defendant argues that "[t]he issues in the two venues are essentially identical, so the resolution of those issues in the earlier-filed Tax Court action would narrow the disputes before this Court."  (*Id.* at 6.)  For similar reasons, defendant also wants to opt out of ADR altogether.  On the ADR issue, defendant adds the additional reason that "[t]he United States likely would be unable to assure the attendance—in person or telephonically—of an individual with full settlement authority.  Settlement authority in tax cases rests with the Attorney

General of the United States or his delegate.  26 U.S.C. § 7122.  Department of Justice regulations delegate settlement authority for cases arising under the internal revenue laws to a limited number of senior officials located in Washington, D.C." (Dkt. No. 33 at 3.)

Plaintiffs oppose the motion for a stay in all respects.  Plaintiffs emphasize that the Tax Court effectively has decided to wait for the outcome of this case before acting on its summary judgment motion or restoring its case to its trial calendar.  Plaintiffs agree with defendant that the principal issues across the two cases are the same, but plaintiffs cite a different reason why this matters: "The district court's Decision and Opinion on the Defendant's motion to dismiss is likely to invoke the doctrine of collateral estoppel with respect to the Tax Court's yet to be issued determination on the government's motion for summary judgment.  Thus, this district court refund action is currently the dog wagging the Tax Court as its tail, rather than the other way around as posited by Defendants." (Dkt. No. 36 at 5.)  As for the readiness of the Tax Court case, plaintiffs note that a resolution of the summary judgment motion then would require certain trial stipulations before the case returned to the Tax Court's trial calendar.  Worse yet, the Court apparently does not yet have a calendar scheduled for Buffalo in 2018, adding some uncertainty to how long a stay of this case would last.  Finally, plaintiffs argue on broader legal grounds that the Internal Revenue Code explicitly gives them the right to pursue relief in a different forum for each distinct tax year.  A stay of this case, in plaintiffs' view, would nullify their rights under the Code.

Plaintiffs have offered a brief and somewhat neutral response to defendant's motion to opt out of ADR: "Plaintiffs would prefer that the parties attempt to settle this litigation by means of mediation, but insofar as Defendant's Motion to Opt Out of Mediation is premised on

6

Defendant's unwillingness or inability to engage in meaningful mediation, Plaintiffs do not want to waste their limited litigation resources pursuing such mediation." (Dkt. No. 37 at 2.)

III. DISCUSSION

### A. Motion for Stay

Strictly speaking, there is no rule in the Federal Rules of Civil Procedure that addresses a general stay of proceedings under the circumstances presented here. Nonetheless, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (internal quotation and editorial marks and citations omitted). "The person seeking a stay bears the burden of establishing its need. Absent a showing of undue prejudice upon defendant or interference with his constitutional rights, there is no reason why plaintiff should be delayed in its efforts to diligently proceed to sustain its claim." *Id.* at 97 (internal quotation and editorial marks and citations omitted). When courts consider staying proceedings under the circumstances here or under analogous circumstances, they consider factors such as "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Pierre v. Prospect Mortg., LLC*, No. 1:13-CV-453 NAM/RFT, 2013 WL 5876151, at *2 (N.D.N.Y. Oct. 31, 2013) (citation omitted). Ultimately, "[i]n considering whether a stay of all discovery pending the outcome of a dispositive motion is warranted, a case-by-case analysis is required, since such an

7

inquiry is necessarily fact-specific and depends on the particular circumstances and posture of each case." *Hachette Distribution, Inc. v. Hudson Cty. News Co.*, 136 F.R.D. 356, 358 (E.D.N.Y. 1991).

Here, several considerations weigh against a stay of the case. Because the parties agree that this case and the Tax Court case are essentially identical, much of the discovery conducted in either case will have a cumulative effect and will not require duplication. Defendant's concerns about the "burden of litigation" thus do not cause the Court much concern at this time. Defendant also volunteers a lot of speculation about how plaintiffs might approach settlement negotiations and how plaintiffs might feel about the cost of employing two private lawyers. Defendant's speculation does not outweigh plaintiffs' explicit assertion of their right to address the tax year of 2010 in the forum of their choice. *See Bush v. Comm'r*, 75 F.2d 391, 392 (2d Cir. 1949) ("Federal income taxes are levied on an annual basis; each year is the origin of a new liability and a separate cause of action."); *accord Karagozian v. Comm'r*, 595 F. App'x 87, 88 (2d Cir.) (summary order), *cert. denied*, 136 S. Ct. 370, 193 L. Ed. 2d 291 (2015). Finally, this case is on track to have all factual discovery completed by February 14, 2018. (Dkt. No. 30.) As stated in the scheduling order, the Court will not adjust the existing deadlines without good cause, which means that this case could be ready for dispositive motions or even a trial date as early as mid-February. Both the parties and the public have an interest in seeing this case reach a final judgment expeditiously, considering that it "potentially fills in the case law with a rare demonstration of how a direct connection to Indian land would actually look." (Dkt. No. 24 at 7 (quoting Dkt. No. 14 at 13).) For these reasons, the Court sees no need for a stay of the case.

### B. Motion to Opt Out of ADR

The Court next turns its attention to defendant's motion to opt out of ADR. Under Section 2.2(C) of this District's ADR Plan, "Opting Out Motions shall be granted only for 'good cause' shown. Inconvenience, travel costs, attorney fees or other costs shall not constitute 'good cause.' A party seeking relief from ADR must set forth the reasons why ADR has no reasonable chance of being productive." Section 2.2(C) offers useful guidance, even though the Court can exempt any case from ADR under Section 2.2(D). Another source of guidance comes from the list in Section 2.1(A) of categories of new cases that are exempted from automatic referral. One category is "[c]ases implicating issues of public policy, exclusively or predominantly." Cases in this District have provided some examples of what "public policy" means for purposes of an exemption from ADR. *See Pickering v. U.S. Dep't of Justice*, No. 13-CV-674, Dkt. No. 33 at 2 (Mar. 24, 2014) ("Actions seeking federal government agency records which may contain investigative material are matters of public policy of the type intended to be exempt from automatic referral to mediation . . . ."); *Niagara Preservation Coalition, Inc. v. Fed. Energy Regulatory Comm'n*, No. 13-CV-817, Dkt. No. 48 at 2 (Sep. 3, 2013) (exempting a case that "challenges federal agency administrative action"); *Kuzma v. U.S. Dep't of Justice*, No. 12-CV-807, Dkt. No. 14 at 2 (Jan. 2, 2013) (finding "that in the ordinary course, cases involving FOIA demands for government agency records, which either contain or may contain sensitive investigative material, and which may be entitled to protection from or limitations on disclosure and production, are matters of public policy of the type intended to be exempt from automatic referral to the ADR program"); *but see United States v. DeSantis*, No. 13-CV-6580, Dkt. No. 25 at 2 (June 2, 2014) (denying exemption that would have rested on

9

"heavily factual" issues); *Occupy Buffalo v. City of Buffalo*, No. 13-CV-407, Dkt. No. 18 at 2 (Mar. 24, 2014) ("This case seeks adjudication relating to the alleged acts of law enforcement and other government employees which are alleged to constitute civil rights violations. The Court finds that the relief sought is primarily based upon the alleged seizure and discarding of personal property and its value and that, in that context, is not the type of public policy case contemplated by the above exemption."). Apart from considerations of public policy, this District has seen exemptions, or requests for exemptions, in cases that presented an "all or nothing" scenario that turned on a "true question of law." *See Uniquest Delaware LLC v. United States*, No. 15-CV-638, Dkt. No. 22 at 1 (Dec. 23, 2015) (tax case concerning whether "Plaintiffs have properly excluded certain public economic development grants from their reportable income"); *see also Pickering v. U.S. Dep't of Justice*, No. 14-CV-330, Dkt. No. 9 at 2–3 (Jul. 15, 2014) (joint motion pending seeking exemption because case involves pure legal issues of propriety of non-disclosures under Freedom of Information Act).

After reviewing the above examples, the Court finds that this case shares features of cases that other judges of the District have exempted from ADR. Whether the Canandaigua Treaty and the 1842 Treaty will exempt plaintiffs' gravel mining income from taxation potentially fills in the case law concerning these treaties, as noted above, and potentially will affect other Indian activities with a similar connection to reservation land. This intersection of Indian treaties and the Internal Revenue Code thus implicates public policy and is central to the resolution of this case. Additionally, like the *Uniquest* tax case cited above, the applicability of the Canandaigua Treaty and the 1842 Treaty is a binary proposition—those treaties either do exempt plaintiffs' income, or

do not. A settlement of the case for an amount less than what plaintiffs paid is theoretically possible but unlikely, since any such amount would not reflect where the parties would stand after a full resolution of the treaty issue. For these reasons, the Court will release the parties from the automatic referral to ADR that occurred on June 17, 2016.

IV. **CONCLUSION**

For all of the foregoing reasons, the Court denies defendant's motion to stay (Dkt. No. 32) and grants defendant's motion to opt out of ADR (Dkt. No. 33).

SO ORDERED.

__/s Hugh B. Scott_____
Honorable Hugh B. Scott
United States Magistrate Judge

DATED: November 9, 2017