UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FREDRICK PERKINS and ALICE J.
PERKINS,

        Plaintiffs,

        v.

UNITED STATES OF AMERICA,

        Defendant.

16-CV-495
DECISION & ORDER

On June 16, 2016, the plaintiffs, Fredrick and Alice J. Perkins, commenced this action "seek[ing] to recover income taxes, interest, and penalties illegally and erroneously collected from [them by the] United States of America pursuant to 28 U.S.C. § 1346(a)(1) and 26 U.S.C. §§ 6402 and 7422." Docket Item 1 ¶ 3. On September 16, 2016, the case was referred to United States Magistrate Judge Hugh B. Scott for all proceedings under 28 U.S.C. §§ 636(b)(1)(A) and (B). Docket Item 10.

On May 18, 2018, the parties cross-moved for summary judgment. Docket Items 60 and 61. On June 15, 2018, each side responded to the other, Docket Items 71 and 72, and the defendant moved to strike certain summary judgment evidence, Docket Item 70. On June 25, 2018, the plaintiffs responded to the defendant's motion to strike, Docket Item 74, and on June 29, 2018, the parties replied to all three motions, Docket Item 75, 77, and 79. On July 24, 2018, Judge Scott issued a Report and Recommendation ("R&R"), finding that all three motions should be denied. Docket Item 84.

On August 7, 2018, both sides objected to the R&R.  Docket Items 85 and 87.  More specifically, the defendant "object[ed] to all portions of the [R&R] related to (1) the conclusion that questions of fact preclude summary judgment in favor of the United States on the issue of whether [the] plaintiffs paid more tax than they owed in 2010; and (2) the conclusion that the [p]laintiffs' gravel-related income is tax exempt because 'the Canandaigua Treaty and the Treaty of 1842 fully cover the scenario that [the] plaintiffs have presented here.'"  Docket Item 85 at 1 (quoting Docket Item 84 at 23).  The defendant "also object[ed] to all portions of the [R&R] related to the recommendation that the Court deny the [defendant's] motion to strike."  *Id.*

For their part, the plaintiffs asserted that any questions of fact related to the preparation of their tax return "are immaterial" and that Judge Scott therefore erred in recommending that their motion for summary judgment be denied.  Docket Item 87 at 4.  Alternatively, the plaintiffs suggested that "the Court should issue an order directing the Government and its auditor, Elizabeth Nix, to sit down with [the p]laintiffs and their attorneys to review and adjust the income and expenses relating to the 2010 tax year," which would "narrow[ ] the triable issues of fact."  *Id.* at 5.

On August 29, 2018, both sides responded to the other side's objections.  Docket Item 90 and 91.  On September 12, 2018, the defendant replied.  Docket Item 92.

On June 6, 2019, the defendant notified the Court that the United States Tax Court had "entered its decision in favor of the Internal Revenue Service [('IRS')] and against [the p]laintiffs, denying [the p]laintiffs' challenges to the IRS's deficiency assessments under 26 U.S.C. § 6651(a) for tax years 2008 and 2009." Docket Item 93 at 1.  For that reason, the defendant contends, "the Tax Court's opinion collaterally

2

estops [the p]laintiffs' identical claims in this lawsuit." Docket Item 93 at 2. The plaintiffs responded to this submission on June 14, 2019, arguing that "a decision of the United States Tax Court does not become final until after the later of the expiration of the period in which to file a notice of appeal or the finality of the appeal." Docket Item 94 at 1 (citing 26 U.S.C. § 7481(a)(2)). Because the plaintiffs "will file an appeal of the Tax Court's decision on or before the expiration of the period for filing an appeal," they said, collateral estoppel does not yet apply. *Id.*

On March 30, 2020, this Court ordered the plaintiffs to file a supplemental brief addressing the defendant's new argument that the variance doctrine bars the plaintiffs' claim. Docket Item 95. The plaintiffs filed their supplemental brief on April 14, 2020. Docket Item 96. With the Court's permission, *see* Docket Item 98, the defendant responded on April 21, 2020. Docket Item 99.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The court must review *de novo* those portions of a magistrate judge's recommendation to which a party objects. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

This Court has carefully and thoroughly reviewed the R&R, the record in this case, the objections and responses, and the materials submitted by the parties. Based on that *de novo* review, the Court accepts and adopts Judge Scott's recommendation to deny both motions for summary judgment as well as the defendant's motion to strike.

As an initial matter, this Court agrees with the plaintiffs that the decision of the Tax Court has not yet become final and that collateral estoppel therefore does not apply. *See Leather v. Eyck,* 180 F.3d 420, 424 (2d Cir. 1999) ("[C]ollateral estoppel . . .

3

means simply that when an issue of ultimate fact has once been determined by a valid and *final* judgment, that issue cannot again be litigated between the same parties in any future lawsuit." (emphasis added) (quoting *Schiro v. Farley*, 510 U.S. 222, 232 (1994))); *see also* 26 U.S.C. § 7481(a)(2) (explaining that if the Tax Court's decision is appealed, it does not become final until a petition for certiorari is denied, the time to file such a petition expires, or the Supreme Court issues a mandate).[1]  Indeed, the defendant implicitly recognized in its earlier motion to stay that the Tax Court's decision would not become final until after it was addressed by the Second Circuit.  *See* Docket Item 43-1 at 4 ("*If the Second Circuit affirms the Tax Court*, [the p]laintiffs cannot sustain their burden to establish that they are entitled to a refund." (emphasis added)).

What is more, as Judge Scott observed, this Court's prior decision that the plaintiffs have a cognizable claim under both the Canandaigua Treaty and the 1842 Treaty was "issued months before [the] decision from the Tax Court."  Docket Item 84 at 6.  Thus, this Court's decision constitutes the law of the case, and the Tax Court's subsequent decision cannot collaterally estop this Court from adhering to its prior decision.  *See Boguslavsky v. Kaplan*, 159 F.3d 715, 719-20 (2d Cir. 1998) (explaining that "[t]he doctrine of collateral estoppel precludes a party from relitigating in a *subsequent* proceeding an issue of law or fact that has already been decided in a *prior* proceeding" (emphasis added)).

---

[1] The plaintiffs represented to the Court that they would "file an appeal of the Tax Court's decision on or before the expiration of the period for filing an appeal," Docket Item 94 at 1," and there is no indication in the record that they missed the deadline for doing so.

Indeed, the Tax Court explicitly acknowledged but disagreed with this Court's decision regarding the applicability of the Canandaigua Treaty and the 1842 Treaty, noting that this case "presents an unusual opportunity for two courts to analyze the same question about the same taxpayers at the same time."  Docket Item 93-1 at 6.  This Court likewise has carefully reviewed the Tax Court's opinion and respectfully disagrees with its conclusion that "[i]ncome earned from selling gravel mined from Seneca Nation land is taxable income that is not excluded by either treaty," *see* Docket Item 93-1 at 1, for the reasons stated in this Court's prior decision, *see generally* Docket Item 24.  As Judge Scott noted, "one way or another, the parties will appear before the Second Circuit soon enough," but until then, the "plaintiffs have the right to pursue this case as independent litigation."  Docket Item 84 at 18-19.

This Court also agrees with the remainder of Judge Scott's analysis, including his conclusion that disputed factual issues preclude summary judgment, *see id.* at 23-31, and that the plaintiffs' evidence was acceptable for consideration on summary judgment, *see id.* at 11-15.  The Court declines the plaintiffs' invitation to "narrow[ ] the triable issues of fact" by "directing the Government and its auditor . . . to sit down with [the p]laintiffs and their attorneys to review and adjust the income and expenses relating to the 2010 tax year."  Docket Item 87 at 5.  As the defendant observes, "there is no statute or procedure that authorizes the order that [the p]laintiffs request."  Docket Item 90 at 4.

Finally, the defendant has raised a new argument in its objection: that it is entitled to summary judgment based on the variance doctrine.[2] "The 'variance doctrine' bars a taxpayer from raising issues in a suit against the United States that were not first raised in a claim for refund" with the IRS. *Carione v. United States*, 291 F. Supp. 2d 141, 146 (E.D.N.Y. 2003) (quoting *Stern v. United States,* 949 F.Supp. 145, 146 (E.D.N.Y. 1996)). Thus, the taxpayer's "grounds for the refund must be at least impliedly contained in the application for refund." *Id.* (citing *Burlington Northern Inc. v. United States,* 684 F.2d 866, 868 (Ct. Cl. 1982)).

The variance doctrine "does not require exact precision; if the issue raised in court 'is derived from or is integral to the ground timely raised in the refund claim,' it 'may be considered as part of the initial ground.'" *Cencast Servs., L.P. v. United States*, 94 Fed. Cl. 425, 440 (2010), *aff'd*, 729 F.3d 1352 (Fed. Cir. 2013) (quoting *Ottawa Silica*

---

[2] The defendant did not raise this argument in its summary judgment briefing before Judge Scott. Typically, this Court would not consider an argument raised for the first time in an objection to an R&R. *See Al-Mohammedi v. City of Buffalo*, 2017 WL 163388, at *1 (W.D.N.Y. Jan. 17, 2017) ("[A]n unsuccessful party is not entitled as of right to *de novo* review by the judge of an argument never seasonably raised before the magistrate." (quoting *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988))); *see also Walker v. Stinson*, 205 F.3d 1327, 2000 WL 232295 (Table), at *2 (2d Cir. Jan. 24, 2000) (finding no abuse of discretion in district court's refusal to consider an argument not raised before the magistrate judge). As the defendant observes, however, the variance doctrine implicates this Court's subject-matter jurisdiction. *See Carione v. United States*, 291 F. Supp. 2d 141, 148 (E.D.N.Y. 2003) (finding that because the plaintiff had "not meaningfully raised the instant theory in the appropriate manner before the [IRS], that theory impermissibly varies from the theory contained in the administrative refund claim" and the court therefore "lacks subject matter jurisdiction over this action"); *Madonia v. United States*, No. CIV-81-659E, 1985 WL 5711, at *3 (W.D.N.Y. Dec. 30, 1985) (explaining that "[t]he rule of substantial variance . . . precludes this Court from exercising jurisdiction over an issue not first raised in the claim for refund"). And a jurisdictional defense cannot be abandoned or waived. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Thus, the Court addresses the defendant's variance-doctrine argument here.

6

*Co. v. United States,* 699 F.2d 1124, 1139 n.6 (Fed. Cir. 1983)).  The central inquiry is "whether the claim presented to the district court was previously submitted to the [IRS] in a manner that enabled 'an intelligent administrative review of the claim.'"  *Carione*, 291 F. Supp. 2d at 148 (quoting *Scovill Mfg. Co. v. Fitzpatrick,* 215 F.2d 567, 569 (2d Cir. 1954)).  In other words, the taxpayer cannot present a new theory to the district court as to why she is entitled to a refund that the IRS did not have a chance to consider at the administrative level; but if the IRS did have that chance, the issue is fair game.

Here, the plaintiffs stated the following in their refund claim:

> As enrolled members of the Seneca Nation of Indians (the "Nation"), the taxpayers have been given permission by the Nation to sell gravel from [the] property on the Nation's territory, in exchange for royalty payments made to the Nation.  Under the Supremacy Clause, the [IRS] may not tax income derived directly from the land protected by federal treaties.  The taxpayers correctly reported these sales as exempt from federal taxation.  The IRS, however, determined the income to be taxable.  Taxpayers have paid the taxes and now seek a refund.

Docket Item 7 at 11.  That is the same theory the plaintiffs present before this Court: they were taxed on gravel income that should have been tax-exempt.  So there is no question that the plaintiffs appropriately teed that precise issue up before the IRS.

It is true that the parties realized during discovery that the plaintiffs had "under-reported the gross receipts earned by [plaintiff] Alice [Perkins] doing business as A & F Trucking."  Docket Item 62 at 17.  The defendant claims that this effectively moots the issue because the amount of tax that the plaintiffs should have paid on their underreported gross receipts "is higher than the exemption of gravel income they claim here."  Docket Item 60-1 at 40.  The plaintiffs counter that the defendant's point is a red herring because they also underreported their "deductible business expenses allocated

7

to the undisputed taxable income," and those expenses "exceed the undisputed amount of taxable revenue." Docket Item 62 at 20. Thus, the plaintiffs argue, they still paid more tax that they owed—provided that the gravel income is tax-exempt. And the defendant then replies that the plaintiffs "plainly did not allege to the IRS that they were due a refund because their 2010 business expenses were underreported"; that the plaintiffs cannot rely on that argument here; and that doing so violates the variance doctrine and deprives this Court of jurisdiction. Docket Item 85 at 5-6.

Cutting through all the back and forth, the crux of the plaintiffs' claim is that their gravel income was improperly taxed. That issue was fully presented in their refund claim to the IRS. The IRS had a full opportunity to investigate all aspects of their claim for a refund; as the plaintiffs observe, however, the IRS chose not to "examine the 2010 income or business expenses, and did not request or review any receipts, statements, workpapers, or other records." Docket Item 96 at 9. Because the plaintiffs' theory as to why they are entitled to a refund has not changed, their claim is not barred by the variance doctrine. And the fact that the IRS has now come up with a new reason why the plaintiffs were taxed in the correct amount (or even less than they should have been) does not change that.

Stated another way, the plaintiffs are not now alleging a new reason why they are entitled to a refund; rather, they are responding to the defendant's argument why they are not. The plaintiffs claimed that they were due a refund for reason A. The defendant responded that even if the plaintiffs were correct about A, they had no claim because of B. The plaintiffs then said that the defendant was wrong about B because of C. That does not mean that the plaintiffs are raising A and C in support of their claim; rather,

8

they are raising A and using C as a response to defense argument B.  That is not a variance by any definition.

In sum, this Court agrees with Judge Scott's recommendation, and the plaintiffs' reply to the defendant's arguments neither changes that conclusion nor deprives this Court of jurisdiction.

## **CONCLUSION**

For the reasons stated above and in the R&R, the parties' cross-motions for summary judgment, Docket Items 60 and 61, are DENIED, and the defendant's motion to strike summary judgment evidence, Docket Item 70, is DENIED as well.  This Court will schedule a status conference to set a trial date.

SO ORDERED.


Dated:     June 1, 2020
           Buffalo, New York


                                             */s/ Lawrence J. Vilardo*
                                             LAWRENCE J. VILARDO
                                             UNITED STATES DISTRICT JUDGE